JEMIMA PAYNE, AS EXECUTRIX, ETC., OF WILLIAM PAYNE, DECEASED, RESPONDENT, *v.* GEORGE MOORE SMITH, AS ASSIGNEE, ETC., APPELLANT, IMPLEADED, ETC.

*Deed — delivery of, in escrow — right of a partner to increase the firm liabilities after the execution of a general assignment — liability of a general assignee.*

One Bunn executed a mortgage upon certain real estate owned by him, to secure the payment of his individual bond. Thereafter, and on March 24, 1879, he executed a deed of the land to himself and one Lyons, his partner, with whom he was, at the time of the purchase of the property, engaged in carrying on business. By this deed, the payment of the bond and mortgage was assumed by the grantees. The deed was left with the attorney of the grantees, upon the agreement that he was to hold it *in escrow*, and that it was not to be considered as delivered until he had been notified by one or both of the grantees, and that, upon his recording it, in pursuance of such a notice, it was to be deemed delivered. On June 9, 1880, the firm made a general assignment for the benefit of their creditors. Upon the same day, and some three or four hours after the execution of the assignment, the attorney, in pursuance of a verbal notice received from Lyons, recorded the deed.

In an action to foreclose the mortgage, it was sought to recover a judgment against the assignee for any deficiency that might arise upon the sale.

*Held,* that one of the partners could not, after the making of a general assignment, prejudice the rights of the firm creditors by accepting the deed and thereby increasing the liabilities of the firm.

That even if such acceptance of the deed were valid, it would only create a personal liability upon the grantees and would not impose any liability upon the assignee or authorize the entry of a judgment for deficiency against him.

APPEAL from so much of a judgment, recovered on a trial at the Special Term, as adjudges the appellant liable, as assignee, to pay any deficiency that may remain unpaid upon the judgment after the application of the proceeds of the sale of the mortgaged property.

*Albert Mathews*, for the appellant.

*G. M. Speir, Jr.*, and *J. C. O'Connor, Jr.*, for the respondent.

DANIELS, J.:

The action was prosecuted for the foreclosure of a mortgage made to secure the bond of Charles H. Bunn, one of the defendants. This bond was executed solely by the mortgagor. After its delivery to the testator a deed was made by the mortgagor to himself and Frank

Lyons, who were, at the time of the purchase of the property, copartners in business, and so continued until the time of the execution of a general assignment for the benefit of their creditors to George M. Smith, the appellant. By this deed the payment of the bond and mortgage was in terms assumed by the grantees, but their liability was resisted on the ground that the deed itself never had been delivered, or in any other manner made operative as to the grantees. This deed was drawn by the witness, George W. McAdam, acting as the attorney for the parties to it; and after it had been subscribed and acknowledged it was left in his hands without being actually delivered to either of the grantees. His final relation of the arrangement was that the parties agreed " that a deed should be. executed ; the time was not fixed definitely ; that it should be left in my possession *in escrow*, not to be regarded as delivered to the firm, nor to be delivered to the firm, until I got notice from both of them to record it. On receiving that notification, and on the record of the instrument, it was to be deemed delivered." He further testified that it remained in his possession from the time of its execution on the 24th of March, 1879, until the day of its record ; that it was retained by him and deposited in his safe. In May, 1879, the grantees entered into a written agreement concerning the deed, and after reciting that it had been sealed, signed and acknowledged, but not delivered, agreed that it should be delivered to McAdam *in escrow*, but not to operate as a conveyance, nor be delivered by McAdam, until he was notified by one of the members of the firm in writing, and he was thereupon to record it and deliver it to either member of the firm on demand ; and from the time of such record the deed was to be in all respects regarded as fully executed, delivered and operative. But if no such election was made by either of such parties within two years and nine months, McAdam was to destroy the deed ; in which event it was to be void and of no effect whatever. The deed remained in this condition until the 9th of June, 1880. On that day the partners made a general assignment for the benefit of their creditors ; and about three or four hours after that had been delivered McAdam was verbally directed by Lyons to record the deed, and he did so.

The evidence given upon the trial did not establish the fact that McAdam was the agent of the grantees, authorized to receive a

delivery of the deed for them. He was simply their attorney, and it was left in his hands as a mere depositary, only to take effect when they, or either of them, should afterwards direct him to cause it to be recorded. In this respect the case very essentially differed from those of *Worrall* v. *Munn* (1 Seld., 229), and *Cocks* v. *Barker* (49 N. Y., 107). For in each of those the deed was delivered to a person sustaining the relation of agent to the grantee named in it, while in the present case the individual with whom the deed remained was not otherwise authorized to act for the parties or either of them, than to draw the deed, retain it in his possession and place it upon the record when that might be directed according to the terms of either of the agreements. But this very clearly did not include the authority to accept or receive an actual delivery of the deed for either of them. He could, therefore, lawfully receive and hold it as a stranger to the transaction, without the fact of its detention by him being attended with any other or different effect than that stipulated for by the parties. (*James* v. *Vanderheyden*, 1 Paige, 385.) The partners, therefore, did not become liable under the clause providing for the assuming of the payment of the mortgage by them, down to and including the time of the execution of their general assignment. Up to the time of the occurrence of that event, the mortgage debt was solely and exclusively the individual obligation of the mortgagor. And after that, neither of the partners had any authority to increase the liability of the firm by directing a record to be made of the deed, for the execution and delivery of the general assignment necessarily worked a dissolution of the firm.

The fact that the property may have been purchased by the mortgagor, intending that it should be for the firm, would not render his copartner liable for the payment of the mortgage debt, for the obligation to pay it was created by a bond executed under seal by the mortgagor, and the liability for the payment of the debt could not be extended so as to include his copartner by proof of the fact that the purchase of the land was intended to be for the benefit of the firm. (*Briggs* v. *Partridge*, 64 N. Y., 357; *Williams* v. *Gillies*, 75 id., 197.)

But even if McAdam had been the agent of the grantees in the deed, so that a deposit of it with him would have operated as a

delivery of it to them, or it should be held that the record made of it under the authority of the notice given to him after the assignment was a legal delivery of it, in neither event would the effect of the transaction be greater than to impose upon the grantees themselves in the deed a liability for the payment of the mortgage debt. That was the clear intent as well as the express design of the terms made use of in the instrument itself, and it accordingly could not be extended so as to include or create any liability on the general assignee for the payment of this debt.

He entered into no covenant or stipulation of that character, and, consequently, there was no foundation for any liability on his part to make this payment other or different from that of a mere indebtedness included within the terms of the assignment. The mortgage debt was not secured by any obligation or evidence of debt existing against the assignee, and for that reason he could not properly be made a party to the action for the foreclosure of the mortgage, further than that might be necessary to subject any possible interest he might have as assignee in the mortgaged property, to the judgment recovered in the action. (3 R. S. [6th ed.], 198, § 98.) His only possible connection with the demand would be to provide for its payment, so far as that might lawfully be done, by including it as a mere debt provided for by the terms of the assignment, and that in no manner rendered him liable for the payment of the deficiency in the judgment. The extent of his duty, in any view, under the assignment, was to provide for this debt with the others in the ordinary course of the administration of his trust, and it was no part of the action for the foreclosure of this mortgage, to subordinate that administration to its determination. If the deed did become operative upon the grantees, then they and they alone were the persons who were obligated by its terms for the payment of the mortgage debt, and upon that theory they were adjudged liable for the deficiency which might remain after the application of the proceeds of the mortgaged property to its payment, and they have not complained of that determination. But whether it was delivered or not, the general assignee could not be included in this liability, for he was not a party to the deed, and in no manner whatever, either by it, or by the terms of the general assignment, assumed the payment of the mortgage debt. And the

fact that the assignee took possession of the land as a part of the assigned estate, cannot legally extend his liability under the assignment. That might very well have been done, even though the land, as it probably did, continued to be the property of the mortgagor, but if it did not, merely taking possession of it under the authority of the assignment would not subject him to any liability beyond that provided for by the assignment for the payment of the debt.

So far as the judgment charged the general assignee with the payment, as such assignee, of the deficiency, it was not authorized.

This portion of the direction given should, . therefore, be reversed, with costs of the appeal to the assignee, and the residue of the judgment should be affirmed.

The other action between the same parties seems to depend upon a similar state of facts, and a like direction must be given for the correction of the judgment in that case.

. BRADY, J., concurred; BARKER, J., concurred in the result.

Judgment modified, as directed in opinion.